UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANNETTE RODRIGUES and CHARLES SMITH,

    Plaintiffs,

  v.

GENERAL MOTORS LLC and DOES 1 through 10, inclusive,

    Defendants.

No. C 23-04488 WHA

**ORDER RE MOTIONS TO REMAND AND DISMISS**

## INTRODUCTION

In this automobile "lemon law" and fraud action, plaintiffs move to remand and named defendant moves to dismiss plaintiffs' fraud claims. For the following reasons, the motion to remand was **DENIED** at the hearing, and the motion to dismiss is now **GRANTED**. What's more, in light of other deficiencies on the face of the complaint, plaintiffs' remaining claims are dismissed as well.

## STATEMENT

On or about May 23, 2021, plaintiffs Annette Rodrigues and Charles Smith allegedly leased a 2021 Chevrolet Bolt from an authorized dealer and agent of defendant General Motors LLC (Compl. ¶¶ 7, 9; Joint Case Mgmt. Stmt. 1). According to plaintiffs, General Motors expressly warranted that "the SUBJECT VEHICLE would be free from defects in materials, nonconformities, or workmanship during the applicable warranty period and to the extent the

SUBEJCT VEHICLE had defects, GENERAL MOTORS would repair the defects" (Compl. ¶ 10). Meanwhile, General Motors "impliedly warranted that the SUBJECT VEHICLE would be of the same quality as similar vehicles sold in the trade and that the SUBJECT VEHICLE would be fit for the ordinary purposes for which similar vehicles are used" (Compl. ¶ 11).

Per the complaint, at some point in 2021, General Motors issued a recall notice involving the 2021 Chevrolet Bolt battery, which "presents a significant safety risk for Plaintiffs because of the inherent risk that the batteries may ignite when nearing full charge" (Compl. ¶¶ 18–19). Plaintiffs broadly contend that they notified General Motors within a reasonable time after their vehicle exhibited defects and invoked applicable warranties, and that General Motors and unknown defendants Does 1 through 10 failed to make their vehicle conform to applicable warranties despite a reasonable number of attempts to do so (Compl. ¶¶ 13–15). Moreover, plaintiffs allege that General Motors knew or should have known that its representations about their vehicle's EPA mileage range estimates were false, and that General Motors concealed the fact that their vehicle could not achieve its expected range and safety (Compl. ¶¶ 16–17).

On August 17, 2023, plaintiffs sued defendants in Contra Costa County for violations of the Song-Beverly Act and California Business and Professions Code Section 17200, as well as common-law fraud. Two weeks later, General Motors removed to federal court. The following month, General Motors moved to dismiss the claims involving fraud (Dkt. No. 8). Plaintiffs then moved to remand to state court (Dkt. No. 18). This order follows full briefing and oral argument.

**ANALYSIS**

**1. MOTION TO REMAND.**

We begin with the motion to remand. Plaintiffs argue that General Motors cannot meet its burden of proving that removal is proper. Curiously, plaintiffs' motion neither addresses nor acknowledges the substantive arguments for removal included in General Motors' notice of removal. Rather, it states and restates the burden of proof. As General Motors points out in opposition, however, all that is required to establish diversity jurisdiction is to show, by a preponderance of the evidence, that complete diversity of citizenship exists and the amount in

controversy is met.  *See Arias v. Residence Inn*, 936 F.3d 920, 925 (9th Cir. 2019).  Based on the pleadings, and as ruled on the record, General Motors clears this hurdle.

Here, where plaintiffs have alleged that they are residents of California, where defense counsel have filed a sworn declaration from General Motors' own in-house counsel stating that General Motors is a Delaware entity with a principal place of business in Michigan (Kuhn Decl. ¶¶ 1, 4–5), and where citizenship of the Doe defendants is not considered, General Motors meets the threshold for showing complete diversity of citizenship.  Meanwhile, where plaintiffs seek Song-Beverly Act damages of $56,235 (Joint Case Mgmt. Stmt. 3), in addition to a civil penalty "two times" those damages (Compl., Prayer for Relief), General Motors meets the threshold for showing the amount in controversy exceeds $75,000.  And, this does not even take into account attorney's fees, which defense counsel have represented — and plaintiffs' counsel have not disputed — can reach $50,000 in such actions (*see* Remand Opp. 5).  Nor does it take into account punitive damages for fraud, which plaintiffs' counsel state are "not presently calculable" but, in an analogous lemon law action involving the Chevrolet Bolt brought by the same counsel, were apparently worth $100,000 (Joint Case Mgmt. Stmt. 3; Remand Opp. 9, Exh. 3 at 3).  Admittedly, all of these figures strike this judge as aspirational.  But, assuming good faith, plaintiffs cannot renounce them now to secure a preferred forum.

Perhaps recognizing this, plaintiffs take a different tack in their reply, pushing back on diversity of citizenship.  According to plaintiffs, defense counsel's sworn declaration setting out that General Motors is a Delaware entity with a principal place of business in Michigan lacks foundation and consists of conclusory statements.  Further, according to plaintiffs, General Motors fails to show citizenship for itself and the plaintiffs at both the time the action was filed and at the time of the removal, as required.  Plaintiffs quibble with the details without even advancing the position that General Motors is *not* a Delaware entity with a principal place of business in Michigan, or that the parties were *not* citizens of different states at the time the action was filed or at the time of removal.  They simply emphasize (and reemphasize) that it is not their burden to prove removal jurisdiction, and that General Motors has not met its burden.

3

At the hearing, the judge declined to indulge this bizarre and quixotic attempt to create an issue where, on the pleadings, there is none. As such, the motion to remand was **DENIED**.

### 2.    MOTION TO DISMISS FRAUD CLAIMS.

We now turn to the motion to dismiss. General Motors argues that plaintiffs' complaint contains only boilerplate, conclusory fraud allegations identical to those that plaintiffs' counsel have filed in a slew of other lemon law matters against General Motors. This order agrees and will ultimately take it one step further: plaintiffs' complaint contains only boilerplate, conclusory allegations full-stop, so all claims must be dismissed.

On a Rule 12(b)(6) motion, a district court must accept well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is all we have here. Plaintiffs have filed a cookie-cutter complaint. General Motors has represented that it mirrors the complaints in more than two dozen actions that plaintiffs' counsel recently filed against General Motors involving the Chevrolet Bolt (Motion to Dismiss Br. 1; *see also* Strotz Decl. ¶ 3). This order observes that, at the very least, the complaint mirrors the complaints in ten such actions that were likewise removed to this district in August 2023.[1]

At the hearing, when the judge asked plaintiffs' counsel about the facts of this specific case brought by these specific plaintiffs, plaintiffs' counsel was only able to rehash generalized facts about Chevrolet Bolt recalls and California law. Here, there are simply no allegations that differentiate plaintiffs' claims from mere recitals of the elements and that would allow them to survive a Rule 12 motion. This applies to both the fraud claims that General Motors challenged (in its own cookie-cutter filing) as well as the non-fraud claims.

---

[1] *See Swearingen v. General Motors LLC*, No. C 23-04314 SI (Judge Susan Illston); *Shah v. General Motors LLC*, No. C 23-04319 SI (Judge Susan Illston); *Pulyankote v. General Motors LLC*, No. C 23-04323 SI (Judge Susan Illston); *Fandel v. General Motors LLC*, No. C 23-04323 SI (Judge Susan Illston); *Kubler v. General Motors LLC*, No. C 23-04325 SI (Judge Susan Illston); *Wieg v. General Motors LLC*, No. C 23-04358 SI (Judge Susan Illston); *Van Horn v. General Motors, LLC*, No. C 23-04320 PCP (Judge P. Casey Pitts); *Patra v. General Motors LLC*, No. C 23-04322 BLF (Judge Beth Labson Freeman); *Aldama v. General Motors LLC*, No. C 23-04326 BLF (Judge Beth Labson Freeman); *Ching v. General Motors LLC*, No. C 23-04442 PCP (Judge P. Casey Pitts).

1    With respect to the fraud claims, as the parties recognize, there is a heightened pleading
2    standard under Rule 9(b) and California law. "Averments of fraud must be accompanied by
3    'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp.*
4    *U.S.A.*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). "[P]laintiff[s] must set forth
5    more than the neutral facts necessary to identify the transaction," specifically, "what is false or
6    misleading about a statement, and why it is false." *Ibid.* (citation omitted). But plaintiffs'
7    allegations cannot carry fraud claims based on misrepresentation or concealment, for that
8    matter.

   For a fraudulent misrepresentation claim, plaintiffs must show, *inter alia*, knowledge of
falsity of a misrepresentation. *See Cansino v. Bank of Am.*, 224 Cal. App. 4th 1462, 1469 (Cal.
Ct. App. 2014). Analogously, for a fraudulent concealment claim, plaintiffs must show, *inter alia*, knowledge of a fact concealed or suppressed. *See Bigler-Engler v. Breg, Inc.*, 7 Cal. App. 5th 276, 310–11 (Cal. Ct. App. 2017). Plaintiffs fail to allege that General Motors had the requisite knowledge of any defect in their 2021 Chevrolet Bolt at the time they leased the vehicle in May 2021 such that General Motors could fraudulently misrepresent or conceal.

   Note plaintiffs baldly allege that a recall notice for 2021 Chevrolet Bolts issued in 2021, stating that batteries of vehicles may ignite when nearing a full charge. But that does not indicate General Motors had knowledge of the battery defect prior to plaintiffs' leasing of the vehicle. In fact, a press release the judge found on the National Highway Traffic Safety Administration website reflects that this recall notice issued in August 2021, several months after plaintiffs leased the vehicle.[2] And, that is to say nothing of the fact that the issuance of a recall notice is, itself, insufficient to plead fraudulent misrepresentation or concealment, and that plaintiffs have not represented that this recall applies to their vehicle.[3]

---

[2] National Highway Traffic Safety Administration, *Consumer Alert: GM Expands Recall, All Chevrolet Bolt Vehicles Now Recalled* (Aug. 20, 2021), https://perma.cc/TE6B-5UNQ. *See* Fed. R. Evid. 201; *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (taking judicial notice of information on a government website).

[3] For what it is worth, the judge found that searching plaintiffs' VIN on General Motors' recall webpage suggests that there is no existing recall for plaintiffs' vehicle. General Motors, *GM Recall and Warranty Center* (last accessed Dec. 21, 2023), https://perma.cc/G6EV-EZR6. If plaintiffs seek leave to amend, as set out below, they should address this point.

United States District Court
Northern District of California

1    In other words, plaintiffs have failed to plausibly allege that General Motors knew of and
2    intentionally misrepresented or concealed facts before plaintiffs leased their vehicle. This is
3    illustrative and by no means exhaustive. Seeing that it is sufficient to warrant dismissal of the
4    fraud claims, however, this order does not reach additional arguments raised in General
5    Motors' motion.

     In their opposition, plaintiffs appear to concede that their pleading is inadequate and
     request leave to amend. This order will allow plaintiffs to seek leave to amend their claims as
     set out below but cautions counsel to address all deficiencies raised by General Motors, not just
     those addressed here. The judge is concerned that the claims also fail as a matter of law. All
     to say, if plaintiffs seek leave to amend, they should be sure to plead their best case.

### 3.    DISMISSAL OF REMAINING CLAIMS.

Plaintiffs bring additional claims under the Song-Beverly Act for breach of express warranty, breach of implied warranty, and violation of Section 1793.2. After dismissal of the fraud claims, plaintiffs' "unfair prong" challenge under Section 17200 of the California Business and Professions Code also remains. For each of plaintiffs' additional claims, plaintiffs simply restate the elements without alleging any specific facts. As such, these claims are likewise not plausibly pled.

By way of example, with respect to the breach of express warranty claim, plaintiffs pursuing an action under the Song-Beverly Act must show that (1) the vehicle had a nonconformity covered by the express warranty that substantially impaired the use, value or safety of the vehicle; (2) the vehicle was presented to an authorized representative of the manufacturer of the vehicle for repair; and (3) the manufacturer or his representative did not repair the nonconformity after a reasonable number of repair attempts. *Oregel v. American Isuzu Motors, Inc.*, 90 Cal. App. 4th 1094, 1101 (Cal. Ct. App. 2001). Meanwhile, plaintiffs allege that:

> On each occasion on which the SUBJECT VEHICLE exhibited defects, non-conformities, misadjustments, or malfunctions, as hereinabove described, PLAINTIFFS notified GENERAL MOTORS, through or [*sic*] one of GENERAL MOTORS' other authorized service and repair facilities, within a reasonable time

> after PLAINTIFFS' discovery thereof. On each occasion of notification, PLAINTIFFS attempted to invoke the applicable warranties, demanding that the authorized repair facilities repair such nonconformities pursuant to the warranties.
>
> On each such occasion, Defendants, and each of them, represented to PLAINTIFFS that they could and would make the SUBJECT VEHICLE conform to the applicable warranties, and/or that they had successfully repaired the SUBJECT VEHICLE. However, Defendants, and each of them, failed to make the SUBJECT VEHICLE conform to the applicable warranties, despite a reasonable number of attempts to do so.

(Compl. ¶¶ 13–14). Plaintiffs do not specify the type of defects, the dates of repairs, where and when repairs were completed, and what constituted a reasonable number of attempts to repair. Their adumbration is inadequate to state a breach of express warranty claim under the Song-Beverly Act.

Meanwhile, "[t]he implied warranty of merchantability requires only that a vehicle be suitable for ordinary use. It need not be perfect in every detail so long as it 'provides for a minimum level of quality.'" *Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 980 (C.D. Cal. 2014) (Judge John F. Walter) (quoting *Am. Suzuki Motor Corp. v. Sup. Ct.*, 37 Cal. App. 4th 1291, 1296 (Cal. Ct. App. 1995)). Plaintiffs fail to raise a genuine dispute of material fact that their vehicle is unfit for its ordinary purpose of providing transportation. They have not claimed that their vehicle experienced defect symptoms or that they have stopped using it. All they allege, beyond restating the elements, is the existence of a product recall and a fear of vehicle failure. But in "asserting a warranty claim, '[i]t is not enough to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that their product *actually exhibited the alleged defect*.'" *McGee v. Mercedes-Benz USA, LLC*, 612 F. Supp. 3d 1051, 1061 (S.D. Cal. 2020) (Judge Michael M. Anello) (quoting *Taragan v. Nissan N. Am., Inc.*, No. C 09-03660 SBA, 2013 WL 3157918, at *4 (N.D. Cal. June 20, 2013) (Judge Saundra Brown Armstrong)). And, here too, plaintiffs "provide[] no support for the proposition that a remote fear or expectation of failure is sufficient to establish non-merchantability." *Ibid*. (quoting *Am. Suzuki*, 37 Cal. App. 4th at 1298).

Briefly, as for the alleged violation of Section 1793.2, plaintiffs do not plausibly plead that General Motors and the Doe defendants failed to promptly replace or repair because they

7

do not provide any information about attempts to replace or repair beyond vaguely stating that attempts were made — again, simply restating the elements. *Id.* at 1059 (citing *Nat'l R.V., Inc. v. Foreman*, 34 Cal. App. 4th 1072, 1077 (Cal. Ct. App. 1995)). Similarly, as for the "unfair" prong of the Section 17200 claim, plaintiffs observe that a challenged activity is unfair when "any injury it causes outweighs any benefits provided to consumers" (Compl. ¶ 87) (citation omitted). Yet no injury *to plaintiffs* on account of *their vehicle* has even been alleged here — and certainly not an ongoing one. "[T]he failure to disclose a defect that might, or might not, shorten the effective life span of an automobile part that functions precisely as warranted throughout the term of its express warranty cannot be characterized as causing a substantial injury to consumers, and accordingly does not constitute an unfair practice under the UCL." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026–27 (9th Cir. 2008) (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 839 (Cal. Ct. App. 2006)).

## CONCLUSION

For the foregoing reasons, the motion to remand was **DENIED** and the motion to dismiss is **GRANTED**. The remaining claims are dismissed as well.

By **FRIDAY, JANUARY 5, AT NOON**, plaintiffs may seek leave to amend by motion, noticed on a normal 35-day calendar. Any motion should affirmatively demonstrate how the proposed complaint corrects the deficiencies identified in this order, as well as all other deficiencies raised in General Motors' motion but not addressed in this order. It should be accompanied by a redlined copy of the proposed complaint showing all proposed amendments. Again, if plaintiffs seek leave to amend, they must plead their best case.

**IT IS SO ORDERED.**

Dated: December 21, 2023.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8