1

2

3

4

5

6                           UNITED STATES DISTRICT COURT

7

8                          NORTHERN DISTRICT OF CALIFORNIA

9

10   ANNETTE RODRIGUES and CHARLES
     SMITH,
11                                                    No.  C 23-04488 WHA
                   Plaintiffs,
12
           v.
13
                                                      **ORDER DENYING LEAVE**
     GENERAL MOTORS LLC, a limited                    **TO AMEND**
14   liability company; and DOES 1 through 10,
     inclusive,
15
                   Defendants.
16

17

18         Last month, an order denied a motion to remand and granted a motion to dismiss

19   plaintiffs Annette Rodrigues and Charles Smith's fraud claims (Dkt. No. 35).  That order also

20   dismissed their remaining claims, which were brought under the Song-Beverly Act and simply

21   restated elements without alleging specific facts.  Plaintiffs were allowed to seek leave to file

22   an amended complaint by motion and encouraged to plead their best case.  Upon review of

23   plaintiffs' motion for leave to file an amended complaint and proposed amended complaint,

24   that motion is **DENIED**.[1]

25

26

27   [1] Plaintiffs also separately filed an "Opposition to General Motors LLC's Motion to Dismiss"
     (Dkt. No. 38).  Seeing that there is no pending motion to dismiss, and that the arguments in this
     brief mirror those in plaintiffs' motion for leave to file an amended complaint and proposed
28   amended complaint, the "opposition" will not be discussed further.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Rule 15(a)(2) provides that leave to amend shall be freely given "when justice so

2    requires."  "When considering whether to grant leave to amend, a district court should consider

3    several factors including undue delay, the movant's bad faith or dilatory motive, repeated

4    failure to cure deficiencies by amendments previously allowed, undue prejudice to the

5    opposing party, and futility."  *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th

6    Cir. 2020) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "Futility of amendment can, by

7    itself, justify the denial of a motion for leave to amend.  If no amendment would allow the

8    complaint to withstand dismissal as a matter of law, courts consider amendment futile."

9    *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 815 (9th Cir. 2020) (internal quotation and

10   citations omitted).

11   Plaintiffs seek to resurrect only their claims brought under the Song-Beverly Act:  breach

12   of express warranty, breach of implied warranty, and violation of Section 1793.2.  Alas, these

13   amended claims would fare no better than their predecessors.

14   To state a claim for breach of express warranty, plaintiffs must show that "the vehicle

15   had a nonconformity covered by the express warranty that substantially impaired the use, value

16   or safety of the vehicle."  *See Oregel v. Am. Isuzu Motors, Inc.*, 90 Cal. App. 4th 1094, 1101

17   (Cal. Ct. App. 2001).  To state a claim for breach of implied warranty, they must show that the

18   vehicle was unfit for its ordinary purpose.  *See Am. Suzuki Motor Corp. v. Superior Ct.*, 37 Cal.

19   App. 4th 1291, 1298–99 (Cal. Ct. App. 1995).  And, to state a claim for violation of Section

20   1793.2, the Song-Beverly Act's replace-or-refund provision, they must show a breach of

21   express warranty and, therefore, a nonconformity as set out above.  *See* Cal. Civ. Code

22   § 1793.2(d).  Simply put, all of these claims require a showing that plaintiffs' vehicle

23   experienced some defect.  No such defect was alleged previously.  So too here.

24   In their proposed amended complaint, plaintiffs broadly contend that they presented the

25   vehicle to a dealership on five occasions "for repair due to a defect in the vehicle's battery"

26   (Proposed Amd. Compl. ¶¶ 14–18).  But, as defendant General Motors observes, plaintiffs fail

27   to adequately elaborate.  Note they do not allege that their vehicle's battery caught on fire,

28   melted, burned, or otherwise suffered from the defect that was the basis for the issuance of the

United States District Court
Northern District of California

1     2021 recall, which was the subject of plaintiffs' original complaint.  In fact, rather than address

2     the judge's observation that searching their VIN on General Motors' recall webpage turned up

3     no existing recall — as requested in the prior order[2] — plaintiffs went ahead and omitted all

4     mention of the recall.  As such, they do not contest that recall repair for this vehicle has been

5     completed.

6          Taking a different tack, plaintiffs now suggest that the defect was introduced by recall

7     repair.  Specifically, plaintiffs suggest that the defect is a reduction in their vehicle's charging

8     capacity.  It is undisputed that General Motors reduced the Chevrolet Bolt charging capacity

9     using software to limit the risk of fire while working through the 2021 recall.  Plaintiffs allege

10    that the battery charging capacity of their vehicle was reduced by ten percent in November

11    2021, and that it was reprogrammed in December 2021, May 2022, and July 2023 (Proposed

12    Amd. Compl. ¶¶ 14–16, 18).  Recall notices reflect that General Motors initially reduced

13    charging capacity by ten percent as an interim fix starting in August 2021, and that advanced

14    diagnostic software it rolled out in June 2023 to continuously monitor batteries in lieu of

15    replacing them reduces charging capacity by twenty percent for 6,200 miles before

16    automatically returning vehicles to a maximum state-of-charge and proceeding to monitor.[3]

17    Such limited reductions in charging capacity do not substantially impair the use, value, or

18    safety of a vehicle, or render it unfit for its ordinary purpose.

19         To the extent plaintiffs want their preferred replacement battery instead of advanced

20    diagnostic software, they want too much.  Of course, if their software detects a problem in their

21    existing battery, plaintiffs will be alerted to contact a certified General Motors dealer to have

22

23    [2] *See* Dkt. No. 35 n.3 (citing General Motors, *GM Recall and Warranty Center* (last accessed
24    Dec. 21, 2023), https://perma.cc/G6EV-EZR6).  Meanwhile, searching plaintiffs' VIN on the
      National Highway Traffic Safety Administration ("NHTSA") website likewise turned up no
25    existing recall.  *See* NHTSA, *Safety Issues & Recalls* (last accessed Jan. 26, 2024),
      https://perma.cc/K6Y4-H8ZE.

26    [3] General Motors, *Product Safety Recall N212345940 High Voltage Battery May Melt or Burn*
27    (Aug. 2021), https://perma.cc/GA6T-XMRH; General Motors, *Safety Recall N212345944 High
      Voltage Battery May Melt or Burn* (June 2023), https://perma.cc/MNY5-UXB5.  *See* FRE 201;
28    *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (taking judicial notice of
      information on a government website).

that battery replaced.[4]  But plaintiffs have not alleged that their software has detected a

problem in their battery (or that a certified General Motors dealer has failed to replace their

battery under such circumstances).  In any event, it appears that plaintiffs and their counsel do

not really want a replacement battery but rather a windfall far greater than the value of their

vehicle, even accounting for the reduction in damages sought in the proposed amended

complaint, now not to exceed $74,500 (Proposed Amd. Compl., Prayer for Relief).

Because amendment would be futile, the motion for leave to file an amended complaint

is **DENIED**.  Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Dated:  January 30, 2024.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court
Northern District of California

---

[4] *See Safety Recall N212345944*.

4